# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-185V
UNPUBLISHED

| | |
|---|---|
| ROISIN MAGEE,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 21, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Camille Michelle Collett*, U.S. Department of Justice, Washington, DC, for respondent.

### **DECISION AWARDING DAMAGES**[1]

On February 6, 2018, Roisin Magee filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 11, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$83,236.92**, **representing $65,000.00 for actual pain and suffering, $997.66 for past unreimbursable expenses, and $17,239.26 for lost earnings.**[3]

---

[1] Although I have not formally designated this Decision "for publication," I am required to post it on the United States Court of Federal Claims' website because it contains a reasoned explanation for the action in this case, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] The parties have stipulated to the amounts for out-of-pocket medical expenses and lost earnings.

I. **Relevant Procedural History**

On February 6, 2018, Petitioner filed a claim seeking compensation for a right SIRVA. On May 7, 2019, Respondent filed his Rule 4(c) report in which he conceded that Petitioner is entitled to compensation in this case. Respondent's Rule 4(c) Report at 1. A ruling on entitlement issued on May 8, 2019. ECF No. 30. The parties thereafter began informally discussing damages, but were unsuccessful, and therefore requested the opportunity to brief the matter. ECF No. 45, Scheduling Order filed February 3, 2020. Petitioner filed her brief on March 9, 2020. ECF No. 46, Petitioner's Brief in Support of Damages ("Br."). Respondent filed a response on April 23, 2020. ECF No. 48, Respondent's Brief on Damages ("Opp.").

II. **Relevant Medical History**

On October 11, 2016 Petitioner received a flu vaccine in her right deltoid. Ex. 1 at 1, Ex. 2 at 2. Approximately three weeks later, Petitioner presented to Dr. Tanuja Sharma on November 1, 2016, for right arm pain and decreased mobility. Ex. 7 at 20. Petitioner stated that immediately following the vaccination she had burning and soreness in her shoulder and developed decreased mobility and pain. *Id.* Petitioner also stated that she had been treating with ice, kinesotape, rest, and over-the-counter pain medication for ten days. Upon examination, Petitioner's shoulder showed limited abduction, adduction, internal and external rotation. *Id.* at 23. Petitioner also exhibited reduced strength. *Id.*

An MRI examination on November 2, 2016 revealed mild spurring with impingement on a portion of the distal supraspinatus muscle and indications of tendinopathy. Ex. 6 at 25. Additionally, there were signs of mild degenerative changes in Petitioner's rotator cuff, mild edema, and a small amount of fluid in the subdeltoid space. *Id.* at 25-26.

On November 8, 2016, Ms. Magee again complained of shoulder pain at the vaccination site. Ex. 6 at 29. Petitioner described her pain as continuous and moderate, rating it as 5-7 out of 10 at rest, but severe (8-10 out of 10) with movement. *Id.* An examination revealed limited range of motion, reduced strength, and tenderness. *Id.* at 33-35. Petitioner was assessed with tendonitis and bursitis. *Id.* at 35.

On December 5, 2016, Petitioner presented to Coastal Orthopedics for a consultation with Dr. Peter Candelora. He noted that Ms. Magee's pain at that time was "severe." Dr. Candelora also stated that Petitioner had "almost no abduction and forward flexion. And when she does move the shoulder all (sic) she has significant pain." Ex. 3 at 1. An examination showed painful and limited motion with about 40 degrees of forward flexion and abduction. Petitioner also exhibited tenderness over the subacromial region. At that time, Dr. Candelora could "barely do impingement testing which is positive." *Id.* at 2-3. Petitioner was diagnosed with impingement syndrome and bursitis.

Ms. Magee began physical therapy on January 5, 2017. Ex. 4 at 2-4. At the initial consultation, she reported right shoulder pain and weakness since her flu shot on October 10. *Id.* at 2. Further, while the "symptoms have improved slightly, she still cannot sleep

on R[ight] side or perform overhead activity." *Id.* Petitioner described her pain as burning, 4 out of 10 at best, 8 out of 10 at worst, and 6 out of 10 at that time. *Id.* Petitioner was also assessed with a 66% disability score. *Id.* at 5.

Petitioner attended five physical therapy appointments between February 8, 2017 and June 5, 2017. Ex. 4 at 9-15. She consistently stated that she performed the at home exercise program, and that her symptoms were improving. *See, e.g.*, *id.* at 15 (a May 22, 2017 appointment when Petitioner stated her shoulder was feeling better).

Ms. Magee's sixth and last physical therapy appointment was on June 5, 2017. At that time, Petitioner "had made excellent progress toward P[hysical] T[herapy] goals and requests discharge to manage condition independently…." Ex. 4 at 17. Petitioner reported decreased pain, describing it as 1 out of 10 at best, 5 out of 10 at worst, and 2 out of 10 at that time. *Id.* Petitioner's disability rating was also reduced from 66 percent to 23 percent. The record states that Petitioner's function, range of motion, and strength were improved and "nearly normal" at that time. *Id.*

### III.    Affidavits

Ms. Magee submitted two affidavits in support of her claim. Petitioner's first affidavit was submitted on January 31, 2018. Ex. 5. Petitioner asserts that she received a flu vaccine on October 11, 2016 and felt a painful burning sensation. The burning subsided within two days and was replaced by an aching pain with severely reduced range of motion. *Id.* at 1.

Petitioner submitted a second affidavit on March 10, 2020. Ex. 9. In it, she stated that she now has constant pain in her shoulder, rating it at 3/10 at rest and 8/10 upon activity. She also explained that she has difficulty sleeping due to pain, and cannot interact with her three children in the same way due to her injury, resulting in emotional distress. Petitioner stated that she was unable to lift, hold, and comfort her youngest child, who was five month old at the time of her injury. Additionally, Ms. Magee had been forced to alter her career as an occupational therapist and work in another area of therapy.

### IV.    The Parties' Arguments

Petitioner requests an award of damages in the amount of $113,236.92, consisting of $95,00.00 for pain and suffering, $997.66 for out-of-pocket medical expenses, and $17.239.26 for wage loss. Only the amount for pain and suffering is in dispute.[4]  Ms. Magee argues that her pain and dysfunction was severe in this case, rating it as 6-8 out of 10 "almost three months post-vaccination." Br. at 7. She also notes that her range of motion was very limited, so much so that her orthopedic surgeon could almost not preform impingement testing. *Id.*

---

[4] The parties have stipulated to the amounts for out-of-pocket medical expenses ($997.66) and lost wages ($17,239.26).

Additionally, Ms. Magee describes how the injury affected other aspects of her life, including her career and her ability to care for her family. According to Petitioner, the injury made it difficult to care for her three children, including the youngest who was five months old at the time of the vaccination. Br. at 7. The SIRVA also negatively impacted her career, as it forced her to seek a less physically demanding area of therapy, resulting in emotional suffering. *Id.* at 8.

Respondent proposes a pain and suffering award of no more than $47,500.00 (hence one-half of Petitioner's requested amount). Opp. at 1. The majority of Respondent's damages brief argues that I should adopt the "continuum approach" for determining pain and suffering used by many special masters before this methodology was called into question in *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 569, 590 (2013). Opp. at 4-12. Under this approach, the statutory maximum of $250,000.00 is reserved for those who were the most severely injured and who have or will suffer the most pain, suffering, or emotional distress. *Graves, 109 Fed. Cl.* at 583. Respondent also emphasizes that the text of Section 15(a)(4) contemplates that at least *some* petitioners would be awarded less than the statutory maximum. Opp. at 6.

Turning to the specifics of this case, Respondent argues that while Ms. Magee sought treatment promptly, her symptoms were only objectively demonstrated for about eight months. Further, Petitioner's interventions included primarily physical therapy and minimal prescriptions medication, rather than some level of surgery. Opp. at 13.[5]

### V.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a

---

[5] Respondent also refers to awards in the traditional tort system as persuasive, citing to research of cases from the last five years that included shoulder injuries, stating that the research is reflected in an appendix that was not included in the filing, and noting that such cases produce far more modest tort awards of less than $30,000.00. Opp. at 12-13. However without being able to review the references, this point is of little persuasive value (although in the future Respondent might be able to identify a comparable state court tort determination on all four points with a Vaccine Program case, and in so doing could substantiate an argument for a less generous award).

mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, the late Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### VI.    Prior SIRVA Compensation

#### A.  Overview of SIRVA Case Damages Outcomes in Settled Cases[7]

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2020, 1,405 SIRVA cases have informally resolved[8] since SPU's inception in July of 2014. Of those cases, 817 resolved via the government's proffer on award of compensation, following a prior ruling that petitioner is entitled to compensation.[9] Additionally, 567 SPU SIRVA cases resolved via stipulated agreement of the parties without a prior ruling on entitlement.

Among the SPU SIRVA cases resolved via government proffer, awards have typically ranged from $75,044.86 to $122,038.99.[10]  The median award is $95,000.00. Formerly, these awards were presented by the parties as a total agreed-upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering. Since late 2017, the government's proffer has included subtotals for each type of compensation awarded.

Among SPU SIRVA cases resolved via stipulation, awards have typically ranged from $50,000.00 to $92,500.00,[11] with a median award of $70,000.00. In most instances, the parties continue to present the stipulated award as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering. Unlike the proffered awards, which purportedly represent full compensation for all of petitioner's damages, stipulated awards also typically represent some degree of litigative risk negotiated by the parties.

---

[7] I use the term "settled" broadly, to include both cases that the Department of Justice resolves via litigative risk discussions and those it proffers (meaning the Government represents that the damages sum accurately reflects its liability under the Act in the relevant case). Prior decisions awarding damages, including those resolved by settlement or proffer, are made public and can be searched on the U.S. Court of Federal Claims website by keyword and/or by special master. On the court's main page, click on "Opinions/Orders" to access the database. All figures included in this order are derived from a review of the decisions awarding damages within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[8] Additionally, 41 claims alleging SIRVA have been dismissed within the SPU.

[9] Additionally, there have been 21 prior cases in which petitioner was found to be entitled to compensation, but where damages were resolved via a stipulated agreement by the parties rather than government proffer.

[10] Typical range refers to cases between the first and third quartiles. Additional outlier awards also exist. The full range of awards spans from $25,000.00 to $1,845,047.00. Among the 21 SPU SIRVA cases resolved via stipulation following a finding of entitlement, awards range from $45,000.00 to $1,500,000.00 with a median award of $115,772.83. For these awards, the first and third quartiles range from $90,000.00 to $160,502.39.

[11] Typical range refers to cases between the first and third quartiles. Additional outlier awards also exist. The full range of awards spans from $5,000.00 to $509,552.31. Additionally, two stipulated awards were limited to annuities, the exact amounts of which were not determined at the time of judgment.

### B. Specific Prior Reasoned Decisions Addressing SIRVA Damages

Additionally, since the inception of SPU in July 2014, there have been a number of reasoned decisions awarding damages in SPU SIRVA cases – meaning where the parties were unable to informally resolve damages, so the dispute was adjudicated and ruled upon by a special master. Typically, the primary point of dispute has been the appropriate amount of compensation for pain and suffering.

#### i. Below-median awards limited to past pain and suffering

In seventeen prior SPU cases, the petitioner was awarded compensation for only actual or past pain and suffering in amounts below the median proffer figure discussed above, and in a range from $60,000.00 to $90,000.00.[12] These cases have all included injuries with a "good" prognosis, although some of the petitioners asserted residual pain. All of the petitioners in such cases displayed only mild to moderate limitations in range of motion, and MRI imaging likewise showed only evidence of mild to moderate pathologies

---

[12] These cases are: *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering and $2,080.14 for actual unreimbursable expenses); *Goring v. Sec'y of Health & Human Servs.*, No. 16-1458V, 2019 WL 6049009 (Fed. Cl. Spec. Mstr. Aug. 23, 2019) (awarding $75,000.00 for actual pain and suffering and $200.00 for actual unreimbursable expenses); *Lucarelli v. Sec'y of Health & Human Servs.*, No. 16-1721V, 2019 WL 5889235 (Fed. Cl. Spec. Mstr. Aug. 21, 2019) (awarding $80,000.00 for actual pain and suffering and $380.54 for actual unreimbursable expenses); *Kent v. Sec'y of Health & Human Servs.*, No. 17-0073V, 2019 WL 5579493 (Fed. Cl. Spec. Mstr. Aug. 7, 2019) (awarding $80,000.00 for actual pain and suffering and $2,564.78 to satisfy petitioner's Medicaid lien); *Capasso v. Sec'y Health & Human Servs.*, No.17-0014V, 2019 WL 5290524 (Fed. Cl. Spec. Mstr. July 10, 2019) (awarding $75,000.00 for actual pain and suffering and $190.00 for actual unreimbursable expenses); *Schandel v. Sec'y of Health & Human Servs.*, No. 16-0225V, 2019 WL 5260368 (Fed. Cl. Spec. Mstr. July 8, 2019) (awarding $85,000.00 for actual pain and suffering and $920.03 for actual unreimbursable expenses); *Bruegging v. Sec'y of Health & Human Servs.,* No. 17-0261V, 2019 WL 2620957 (Fed. Cl. Spec. Mstr. May 13, 2019) (awarding $90,000.00 for actual pain and suffering and $1,163.89 for actual unreimbursable expenses); *Pruett v. Sec'y of Health & Human Servs.*, No. 17-0561V, 2019 WL 3297083 (Fed. Cl. Spec. Mstr. Apr. 30, 2019) (awarding $75,000.00 for actual pain and suffering and $944.63 for actual unreimbursable expenses); *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering); *Weber v. Sec'y of Health & Human Servs.*, No. 17-0399V, 2019 WL 2521540 (Fed. Cl. Spec. Mstr. Apr. 9, 2019) (awarding $85,000.00 for actual pain and suffering and $1,027.83 for actual unreimbursable expenses); *Garrett v. Sec'y of Health & Human Servs.*, No. 18-0490V, 2019 WL 2462953 (Fed. Cl. Spec. Mstr. Apr. 8, 2019) (awarding $70,000.00 for actual pain and suffering); *Attig v. Sec'y of Health & Human Servs.,* No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000.00 for pain and suffering and $1,386.97 in unreimbursable medical expenses); *Dirksen v. Sec'y of Health & Human Servs.*, No. 16-1461V, 2018 WL 6293201 (Fed. Cl. Spec. Mstr. Oct. 18, 2018) (awarding $85,000.00 for pain and suffering and $1,784.56 in unreimbursable medical expenses); *Kim v. Sec'y of Health & Human Servs.*, No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 in unreimbursable medical expenses); *Knauss v. Sec'y of Health & Human Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 in unreimbursable medical expenses); *Marino v. Sec'y of Health & Human Servs.,* No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable medical expenses); *Desrosiers v. Sec'y of Health & Human Servs.*, No. 16-0224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 in past unreimbursable medical expenses).

such as tendinosis, bursitis, or edema. The duration of injury ranged from six to 29 months, with such petitioners averaging approximately fourteen months of pain.

Significant pain was reported in these cases for up to eight months. However, in approximately half of the cases, these petitioners subjectively rated their pain as six or below on a ten-point scale. Petitioners who reported pain in the upper end of the ten-point scale generally suffered pain at this level for three months or less. Slightly less than one-half of these individuals had been administered one to two cortisone injections. Most of these petitioners pursued physical therapy for two months or less, and none had any surgery. The petitioners in *Schandel, Garrett,* and *Weber* attended PT from almost four to five months, but most of the PT in *Weber* focused on conditions unrelated to the petitioner's SIRVA. Several of these cases (*Goring, Lucarelli, Kent, Knauss*, *Marino*, *Kim*, and *Dirksen*) included a delay in seeking treatment. These delays ranged from about 42 days in *Kim* to over six months in *Marino*.

### ii. Above-median awards limited to past pain and suffering

In eight prior SPU cases, the petitioner was awarded compensation limited to past pain and suffering but above the median proffered SIRVA award, in ranges from $110,000.00 to $160,000.00.[13] Like those in the preceding group, the relevant petitioner's prognosis was "good," but these higher award cases were characterized either by a longer duration of injury or by the need for surgical repair. Thus, seven out of eight underwent some form of shoulder surgery, while one (*Cooper*) experienced two full years of pain and suffering, eight months of which were considered significant, and also required extended conservative treatment. On the whole, MRI imaging in these cases also showed more significant findings, with seven of eight showing possible evidence of partial tearing.[14] No MRI study was performed in the *Cooper* case.

---

[13] These cases are: *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019) (awarding $125,000.00 for pain and suffering); *Kelley v. Sec'y of Health & Human Servs.*, No. 17-2054V, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019) (awarding $120,000.00 for pain and suffering and $4,289.05 in unreimbursable medical expenses); *Wallace v. Sec'y of Health & Human Servs.*, No. 16-1472V, 2019 WL 4458393 (Fed. Cl. Spec. Mstr. June 27, 2019) (awarding $125,000.00 for pain and suffering and $1,219.47 in unreimbursable medical expenses); *Reed v. Sec'y of Health & Human Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering and $4,931.06 in unreimbursable medical expenses); *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $305.07 in unreimbursable medical expenses); *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000.00 for pain and suffering and $3,642.33 in unreimbursable medical expenses); *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering and $3,143.80 in unreimbursable medical expenses); *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 in unreimbursable medical expenses).

[14] In *Reed*, MRI showed edema in the infraspintus tendon of the right shoulder with a possible tendon tear and a small bone bruise of the posterior humeral head. In *Dobbins*, MRI showed a full-thickness partial tear of the supraspinatus tendon extending to the bursal surface, bursal surface fraying and partial thickness tear of the tendon, tear of the posterior aspects of the inferior glenohumeral ligament, and moderate sized joint effusion with synovitis and possible small loose bodies. In *Collado*, MRI showed a partial bursal surface tear of the infraspinatus and of the supraspinatus. In *Knudson*, MRI showed mild longitudinally oriented

During treatment, each of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale, and all experienced moderate to severe limitations in range of motion. Moreover, these petitioners tended to seek treatment of their injuries more immediately (e.g., within five to 45 days from onset). Duration of physical therapy ranged from one to 28 months and six out of the eight had cortisone injections.

## VII.  Appropriate Compensation in this SIRVA Case

In this case, Ms. Magee's awareness of the injury is not disputed, as she has been established to be a competent adult with no mental/cognitive impairments that would impact her acuity. As a result, the magnitude of the pain and suffering award in this case turns on the other two factors – severity of injury and its duration.

A review of the complete record reveals that Petitioner suffered a mild to moderate shoulder injury that was serious enough for her to promptly seek medical care, but only involved relatively conservative treatment for a nine-month period.

Petitioner first complained about shoulder pain on November 1, 2016, approximately three weeks after her vaccination. Ex. 7 at 20. Petitioner's care involved an MRI, three doctor appointments, and seven physical therapy sessions. Ms. Magee had significant pain and reduced range of motion early during her treatment, as noted by Dr. Candelora on December 5, 2016. Ex. 3 at 1-3. However, the MRI on November 2, 2016, indicated a less extreme injury, noting mild edema, a small amount of fluid in the subdeltoid space, and mild spurring with impingement. Ex. 6 at 25-26. Petitioner's course of treatment also involved mainly conservative therapies that were fairly successful, further indicating her injury was not severe. Ms. Magee did not undergo surgery or receive steroid injections which is often seen in cases with severe SIRVA injuries. Instead, Petitioner's care consisted of three visits to medical practitioners, an MRI, and seven physical therapy sessions over approximately nine months. Further, on June 5, 2017, approximately nine months after her vaccination, Petitioner requested to be discharge to manage her condition independently and reported a significant reduction in pain. Ex. 4 at 17 (describing it as 1 out of 10 at best, 5 out of 10 at worst, and 2 out of 10 at that time). Her function, range of motion, and strength were also described as "nearly normal" at that time. *Id*.

Accordingly, Petitioner's treatment did not exceed one year in length. In addition, she did not require surgical intervention, although she endured multiple physical therapy sessions and an MRI. And her pain was immediate enough to be noticeable, and peaked over time (especially with movement), but improved significantly within seven months after vaccination. Ex. 4 at 17; Ex. 6 at 29; Ex. 7 at 20. I recognize that Petitioner's affidavit described significantly more pain (rating it at 3/10 at rest and 8/10 upon activity). Ex. 9.

---

partial-thickness tear of the infraspinatus tendon, mild supraspinatus and infraspinatus tendinopathy, small subcortical cysts and mild subcortical bone marrow edema over the posterior-superior-lateral aspect of the humeral head adjacent to the infraspinatus tendon insertion site, and minimal subacromial-subdeltoid bursitis.

However, this is directly contradicted by the contemporaneous medical records, which are generally accorded more weight than later-recorded testimony.[15]

Another factor that is considered in awarding an amount for pain and suffering is the effect of the injury on Ms. Magee's personal life. While Petitioner's SIRVA undoubtedly made it more difficult to care for her three small children, I note that Ms. Magee's shoulder pain was largely resolved within nine months of vaccination. Further, although Petitioner had to alter her career path to a less-physically demanding type of therapy, she is being compensated for lost wages. These factors will play a role in the amount awarded for Ms. Magee's pain and suffering, but do not marshal in favor of a significantly larger award.

The above-described course is very similar to the petitioners in those cases featuring damages below median award for proffered SIRVA cases, where petitioners experienced from seven to 15 total months of pain and suffering. *See, e.g.*, *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335, at *9 (Fed. Cl. Nov. 6, 2019); *Kim*, 2018 WL 3991022; *Attig*, 2019 WL 1749405; *Marino*, 2018 WL 2224736. Petitioners in two of these very comparable cases reported only one to three months of significant pain and all three cases included MRI findings consistent with a milder type injury, but received no more than $75,000.

I am not persuaded by Petitioner's argument that her injury is similar to, or even slightly worse than, that in *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 in unreimbursable medical expenses). The petitioner in that case experienced more severe pain, at a level of 8-10 on a scale of 1-10, for a period of three months, and also had more extensive surgical procedures, including an open biceps tenodesis requiring a 4 cm incision. *Collado* at *2-3. Ms. Magee required no surgical intervention. In addition, at seven months after vaccination, the petitioner in *Collado* reported pain that was "about 40% improved," while Ms. Magee's pain was largely gone by the same time in her recovery. *Collado* at *4; Ex. 4 at 17. The *Collado* award therefore exceeds what is appropriate under these facts.

Under such circumstances and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that **$65,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

---

[15] Special masters in the Vaccine Program have in most cases declined to credit later testimony over contemporaneous records. *See, e.g.*, *Stevens v. Sec'y of Health & Human Servs.*, No. 90–221V, 1990 WL 608693, at *3 (Cl. Ct. Spec. Mstr. Dec. 21, 1990); *Vergara v. Sec'y of Health & Human Servs.*, No. 08–882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. July 17, 2014) ("special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recounted in later medical histories, affidavits, or trial testimony."); *see also Cucuras*, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight").

VIII. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $65,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[16]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $83,236.92**, **representing compensation in the amount of $65,000.00 for actual pain and suffering, $997.66 for past unreimbursable expenses, and $17,239.26 for lost earnings in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[17]

**IT IS SO ORDERED.**

                               <u>s/Brian H. Corcoran</u>
                                Brian H. Corcoran
                                Chief Special Master

---

[16] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.